The next case call for oral argument is Hanson v. Lumley-Truffitt. I think it's Vaughn. Vaughn v. Barton. I'm sorry. Vaughn. Vaughn. Vaughn. I'm sorry. I've got the wrong case. Vaughn v. Barton is the next one. My mistake. May it please the court. My name is Bill Alexander. I am here for the plaintiff in this case. We are here because after two days of trial and all the evidence being presented in this case, the defendants moved for a directive verdict. There were three issues raised by the defendants. Judge Desmond, the trial judge, denied two of those and granted one, and the case was over. Your Honors, the motions for directive verdict involve three statutes. The Recreational Use of Land and Waters Act, which is the act upon which Judge Desmond made his finding of directive verdict. Also at issue are the Baseball Facility Liability Act and the Sports Volunteer Immunity Act. That last one, even though it says Immunity Act, I would disagree with the title of it. I would like to first of all address the Recreational Use of Land and Waters Act, and I'll probably just refer to it as the Recreational Act. I need to set a little stage for you before I do that. My client, Debbie Vaughn, was the mother of a baseball player in the Little League, and as I've been told consistently, we have sued the wrong people because it's a little league that everybody participates in. But she was injured. She went as a spectator to watch her son play a baseball game that was being played on the field. As she got there, she took a position on leisures. Your Honors, in the appendix I have submitted a drawing that is a replica in miniature of a large drawing that was used during the trial. It shows the location of the parties and the location of the facilities at this baseball field. She sat and was watching her son play on the field. And unknown to her, there were boys warming up for the next game. They were warming up between the bleachers. And I think that you'll see in the record that everybody, other than the boy throwing the ball, says that this is the wrong place. Nobody's supposed to warm up in this area. But they were warming up. The young boy, I think he was 11 or 12 at the time, threw a ball, and there's a question whether the recipient of that ball, whether the ball actually hit the glove or not, but no matter, the ball went and hit my client in the eye, resulting in surgery. All the medical is basically undisputed. And she was injured. Your Honors, the Recreational Act, if this would have been three or four months later, this act would not have applied because it was amended. It doesn't apply anymore to such events. The original intent of this act was for landowners, like farmers, to allow people to come to their swimming hole and swim without worrying about liability. This act was meant to allow people to use land where there was no charge and that landowners not have to worry about being sued because the premise had a defect in it. What's the amendment that you say would now have taken this situation out of the act? I'm sorry? What is the amendment to the statute? It takes it back to the original language talking about land use and restricting it to basically farmland or timberland or that type of land. The act, when this occurred, talks about recreation, which is a broad term. And I'm not here to dispute that, as it was defined at the time, it can include the actions that were taken in place at the baseball game. But interestingly, there's no cases talking about overnight sports in this act. But the act, inside of that act, it says if there are charges for the use of the land, then the immunity does not apply. Now, that is one where I disagree. Judge Desmond granted the directive verdict because of a case that interpreted the Snowmobile Act, which is an act that is very similar, and it also has an immunity provision in it. But the Snowmobile Act, in the case of Jacobson, which is in the briefs, the Snowmobile Act case said that even though some people paid, in this particular situation, the person did not pay, and therefore the immunity is applied to that person. In other words, the person was out of court in Jacobson. There is another case, Phillips. And these are the only two cases that any of us have cited, and I've checked the sites again, I find no others. Phillips is a case dealing with the Recreational Act itself. And in that case, the appellate court said, we do not believe there is a legislative purpose or public policy to be served by making a distinction between paying and non-paying users of the defendant's property. In that case, it was dealt with somebody riding a horse in a cinch strap rope. The person riding had not paid. Other people at various times were charged for riding horses. The court said there should be no distinction. Therefore, there was no immunity in the Phillips case. The Phillips court referred to something that I would like to use as an example. I am a senior citizen, and if I go to a sporting event, let's just get it out of the baseball arena for the moment, let's talk about, let's say I go to a football game, and there's no other immunities that apply. And I get to the football game, I'm there to pay as a spectator, and I find out it's senior citizen night. I'm in free. I go in, I sit on the bleachers, and I'm among all these people who have paid to get in. And I'm proud of myself because I didn't have to pay. The bleachers collapse. Defective maintenance. Everybody else gets a suit but me. That shouldn't be. Is there any distinction in Phillips or Jacobson which the participants were injured in both of those cases? This was not a participant. This was a spectator. Spectator. So you think that's the key to the fact that she should have been allowed to proceed? I think the key is it doesn't matter. All the participants in the low leg pay, and that takes them outside of the record. Judge Desmond even referred in part of his ruling to the fact that if the boy who threw this had thrown it and it had hit a participant in the low leg, that the immunity would not apply. That there is no fairness there. That there should be a distinction. If another boy gets hit by the ball, he has the ability to bring a claim. But my client, who is a spectator, invited to watch this event, is not allowed to make a claim because of the interpretation. I cited some other examples, but there is another reason that I believe that Judge Desmond's ruling is incorrect, and I say that respectfully. The act is a premises liability case. Now, my allegations of negligence against the rec association and also against Jared Barton, who I claim as an agent of the rec association, there are allegations in there about premise liability and warnings. And I agree that if this act applies, those allegations should be probably kicked out by the court. But there were also allegations of failure to supervise and failure on part of the coach and the rec association. I don't believe those fall within premises liability. In other words, if your client had stepped in a hole and broke her ankle, that would be a different case than what you're bringing here. Well, if we ignore the pain part, yeah. But the premise, you know, it is premise. And by the way, the Phillips court, which is the one that found that there should not be a distinction between pain and non-pain, stated at the end of its decision that it hadn't really been raised. But the cinch strap on the horse is what broke, and they questioned, is that really a premise liability type of case? They had already ruled otherwise, so they didn't really make a ruling on that. But I believe they are correct in bringing that up. I don't believe that all of the allegations of negligence fit into a premise liability situation. Let me ask you a question about Coach Barton. He was granted immunity under the Recreation Act also. Is that correct? Yeah, and I don't dispute that. You don't dispute that? No. If it applies to the rec association, I'll accept the application of it to their agent for the purposes of this appeal. If you set it back, I may argue otherwise. Don't give up anything. To be honest, I would like to move on from the Rec Act. Baseball Facility Act. It's a baseball facility liability act, and it is basically an immunity act. I don't disagree that it's an immunity act. It was passed back in 1991, 92, and it was a result of our courts of two cases up in Cook County where people were injured at baseball games, the White Sox and Cubs. The courts found that, yeah, you can bring an action for that, and the legislature, with amazing haste, tried to change that. They passed this act, which basically says there is no liability. The thing here is that this is not a stadium. It's not like the Miners Stadium or Bush Stadium or Wrigley Field. This is a park where there is a field with a fence around it, and there are spectator seats. My client was, I repeat, was in the spectator seats provided by the rec association. This facility is not the same as you would go to one of those parks, one of those stadiums. Well, but the statute says any field, park, or stadium. I know it does. It doesn't have to be a major league or a minor league stadium. Yeah, I understand that, Judge. And the statute also says that it includes practice, right? Yeah. And it doesn't say from a ball batted in the field of play. It doesn't say that. It just says for any injury as a result of being hit by a ball or a bat. Let me take that and use an example. Does that mean that, I'm sorry, I'm not a Cubs fan, but let's say I go to Wrigley Field, and one of the Cubs gets his uniform on and decides he's going to go out on the sidewalk outside of Wrigley Field and warm up with somebody else. And he throws the ball, and I'm walking along, not knowing they're there. And I get hit? Does that mean the act applies? We're at the stadium. He's a ball player. There has to be some reasonableness to where that actually applies. Here my client was sitting in bleachers paying attention to the field, and this occurred to their side or behind her in an area where you don't expect a ball to be thrown from. The old cases before Illinois made these decisions back in the early 1990s, the old cases, a lot of denied liability at a baseball game because basically of an assumption of the risk type of thing. You'd go to a ball game, and you'd expect balls to come from the field or bats. I've never witnessed it personally, but I've seen it on TV where the bat slips and goes into the spectator area. Those things happen. And when you go to a game like that, you would expect that. But do you expect somebody to be warming up behind you? Do you expect somebody to be in a position where you're paying attention to where you're supposed to be paying it, and somebody's back here, and they throw a ball? But we don't have major league stadiums where the players are encompassed in only one area of player practice. We have little leaguers that are just playing everywhere. That's right. Absolutely. But I would also, and this goes part to the argument about this Volunteer Act, everybody who testified other than the boy threw the ball said nobody should be warming up in that area. Nobody should be warming up. Matter of fact, they were told, the coaches were told nobody should be warming up. The boy says that, coach, you happen to be his father. Never said don't warm up in this area. The act, I believe, was meant to apply to balls and bats from the field. It was meant to apply to stadium-type events, not the type of situation where we have in the rec-type areas. I would also point out that in the act, it talks about the facility as used for the play of baseball. The area this occurred in was a spectator area, not the area for the play of baseball. And I go back to the general statements about immunity, and that is that whenever we look at a statute that gives immunity, it must be strictly construed against those seeking protection. I sort of call it the fine-tooth comb test. You have to go through with a fine-tooth comb. And if it doesn't pass everything, then it has to say there is no immunity. The act defines owner as a person, city, town, county, special district, limited liability company, school district, community college district, college or university. Is the association any of those? It's a not-for-profit corporation. It is not a municipality or we'd be dealing with other entities. By the way, the park district itself was a party, and they were allowed out on summary judgment, and that is not challenged. The park district leased this property to the rec association. Judge Desmond determined that the rec association had control over this property. Finally, the Sports Volunteer Immunity Act. As I said, the word immunity really needs to be deleted from this title. A reading, a fine-tooth comb reading of this statute shows that it does not provide immunity. It sets a standard or a burden of proof issue, and that is that a volunteer coach, which Jared Barton was, But at the time of the accident, Coach Barton was a spectator. So why would he get to have the immunity if there isn't an immunity under the Volunteer Act? If he was a spectator, I don't know. That's what I'm going to ask these two guys. It's my position, and I allege that he was an agent at the time, because I want him to be an agent and the rec association to be liable for his actions. Now, there is a dispute over that. And I noticed the rec association, when they talk about the boy throwing the ball, calls it practice, where everybody else has called it a warm-up. And is there a distinction there? I'm not sure. To me, practice is a little bit higher level than a warm-up. And if there is actually a practice going on, shouldn't the coach be involved in supervising that? The Sports Volunteer Immunity Act talks about, we have to see if his conduct was outside of the conduct of such a person as himself. All the testimony in this case, and there were the presidents of the rec association, others involved in the rec association that testified that there should not be anybody warming up between these bleachers. Also, the testimony was that the coaches had been told before the season that they should not. The area to warm up was outside the outfield. And they will say that the person who said this was my client's husband, and that is correct. The fact is that Cody Martin, who threw the ball, said he had never been told this. And I think that all of this is sufficient, and Judge Desmond agreed, that there was sufficient evidence to show a primary patient case to take that question to the jury. I noticed also that really the defendant, Martin, does not suggest in his brief that this isn't an absolute immunity. He talks about the proof, and he indicates that we failed to meet that primary patient case standard. I would suggest to the court that Judge Desmond heard the testimony, all the evidence, and at that point found there was a primary patient case. My time is up now. Thank you, Counsel. Counsel? May it please the Court. Dan Price from Centralia. The general principle I think we're going to follow, if it's all right, is that we'll divide our time, Mr. Phelps and I, approximately equally. The main emphasis that I'd like to address is to take up where Mr. Alexander left off, and that's this Sports Volunteer Community Act. And maybe just a little bit of background about what happened would be helpful. Martin is a volunteer coach, if there's any question about that, coaching his kids' team. He's got 12 or 13 kids. They've got the next game up at field three. They show up for 15 or 20 minutes while the other game is ongoing, and more or less at the time this happened, Judge Wexton, as you observed earlier, Martin was a spectator for practical purposes at that moment in time. There is no evidence that he knew anybody was playing catch behind him in between the bleachers. He'd come in, he'd set a bucket of balls down, he'd run up, and as a matter of fact, he was more or less shoot the breeze with the third-base coach, who happened to be the plaintiff's husband, just as those things occur in small towns. And, of course, he didn't see anything going on behind him either. So this unfortunate occurrence takes place, and one must ask oneself, what did Mr. Martin do wrong under the proven evidence? Well, under the typical duty and breach of duty analysis that would apply, one might argue that perhaps he should have known something. But when one looks at his conduct in light of this immunity, one can see that even if there was a question of fact about whether or not there was a breach of the duty, that by itself would be insufficient, would not be enough. The very last sentence says very specifically, it should be insufficient to impose liability to establish only that the conduct of such person fell below ordinary standards of care. So is this clear and convincing? Is it somewhere between negligence and clear and convincing? It's obviously a different standard of care. Well, it is a different standard of care, and I would submit that, I'm not in the legislature, but probably that term itself is an unfortunate term to use here, because that sort of implies a professional sort of standard, and I don't think when we talk about something like little league coaching that you need expert testimony necessarily, because this is largely a matter of common experience, you know, in large measure. Almost everybody who's got children is coaching a team all the time. But there were two counts against Barton. One in Wolfram Lawton and the other in negligence. Now, Judge Destin directs the verdict in favor of Barton on the Wolfram Lawton counts, and that's not challenged. So we can say that the evidence did not establish Wolfram Lawton. If you read this thing, it says that the conduct must be substantially below standards generally practiced and doing the act was the breach of a recognized duty. I mean, it's difficult language to work with, and there is no case under it. Gross negligence. Huh? Gross negligence. And it's something in that nature, sure. I think it is, Judge. I think it's kind of a dull-when-you-see-it kind of thing. It's not simple negligence, and it's something less than Wolfram Lawton conduct. We've been referring to it as a burden of proof, and that's maybe not quite the most article term. It's a heightened level of culpability, and we've cross-appealed on this, because if you pull hard and look at the record, it doesn't indicate this man did anything but show up at the ballpark and watch the game in front of him. He hadn't brought his team together. And, Judge Wexner, you brought up an interesting question about that, as I had a chance to think about it, because if this man is going to be charged with any duty, any different than anybody else sitting there watching the game, it is only because of his capacity as a coach. It couldn't be anything else. And so if he has some duty in his capacity as a coach, well, then any duty, any immunity or heightened burden of proof would be applicable to a charge of that capacity, I think, is the answer to the question that you brought up earlier. You know, you think about the burden that you put on somebody that's a volunteer, and where this starts and where this stops. I mean, this guy hadn't brought his team together yet. He was watching the game. He says what he did was, you know, at some point before they take the field, he does get them together and then they commence a formal warm-up. But that hadn't started yet. It's unclear in the record how many of his team even was there. But if you take this position that Mr. Alexander was asserting, and you take it to its logical extreme, I guess, as soon as any of the kids from the team show up at the ballpark, the coach has got potential responsibility, whether he's done anything or not. And if that would be the law of Illinois, who would want to be a volunteer coach? I mean, I remember in those days in the miscreants and the hooligans that you theoretically had supervision over, and it's a challenge even when the game's going on. Well, okay, but these little leaguers' parents drop their kids off at the ballpark, and don't they expect the coach then to take charge of them? What if they drop them off two hours early? Well, that's, you know, let's say taking that kind of thing out, if they drop them off at the appropriate time and so forth, I mean, as a parent, doesn't a parent certainly expect the coach is going to take charge of them when they're there at the ballpark 15 minutes before the game? Certainly at some point in time, but I think when they're spectators of the previous game. I mean, let's say something else happened. Let's say they got drug off in the bushes or something. You're going to charge the coach with that? Well, if the parent turns the child over to the coach, doesn't the coach have some obligation? You understand what I'm saying? I understand what you're saying. You're saying there's no obligation to the coach to take responsibility for the kids. Well, maybe once he's called them together, there may be something that would derive of that nature. But he hasn't done that yet. It's uncontested that he's done it. So, I mean, if you have a parent, and the parent pulls up to the ballpark and says, okay, out, and never sees the coach, never has any contact with the coach, just expects something of the coach that they themselves would not deliver because they're driving away. I don't see that as an obligation of the coach. I don't know of any authority that would impose such a burden on him. You ask yourself what is substantially below. We were talking about this at the hospital. Two kids we still have at home, and I used to coach. And I was trying to think of what would they be talking about if it would be along those lines. And one of the girls brought up to me that when I was coaching soccer years ago, I picked up a kid in the neighborhood to take him to soccer practice, and there he stood on a porch with a sword. Honest truth. He intended to go to soccer practice with a sword. And, of course, I said, Garson, lose the sword, put it in your house, and come on back up. You know, I mean, if you let him go ahead with something like that, and he hurts somebody, and it's just totally out of bounds, well, yeah. I mean, I think that's the kind of thing that common sense would say that there should be responsibility for. But this sort of thing, it's just the natural thing that happens at a ballpark, is not enough, I would respectfully suggest. And unless there's something else I should address, I'll give the rest of my time to Mr. Phelps. Thank you very much. Thank you, Counsel. May it please the Court, my name is Kelly Phelps, and I represent the West Franklin Recreation Association in this case. And I would like to just address a couple of points that Mr. Alexander mentioned in terms of the Recreational Use Act. And I think, as Mr. Alexander said, there's only really two cases that we've cited in our briefs that Judge Desmond looked at, and that's the Phillips case and the Jacobson case. I do think that it's clear from the record that Judge Desmond considered the Phillips case when rendering his decision, and he found that it wasn't applicable and instead found the Jacobson case more in line with the facts of this case. And I think that the question I think Justice Weston asked about whether the spectator aspect of this case made it any different, and I think really what the Jacobson court looked to, and I think is the proper focus here, is the use of the premises. In these cases, the purpose of the Recreational Use Act really is to immunize landowners or occupiers if the use of the premises is gratuitous, if they're being used free of charge. In the Phillips case, the little leaguers are the ones using the land through the lease of the Recreation Association. They pay a participation fee. And they're the users, and they pay money to use it. And I think in that particular case, that wouldn't fall under a charge as it's defined by the Recreational Use Act. And if you look at that, I think it's... The Recreational Use Act doesn't say that... The question is whether the person injured paid a fee. What it says is, nothing in this act limits in any way any liability which otherwise exists for injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof. And so, I mean, here it's the little leaguers who are... They're not paying... What they're paying is a fee to participate in the league. They're playing baseball on this particular field that's being leased from the Park District. They're not paying a fee to come onto the land. They're paying a fee, a participation fee, to participate in the league. And in this particular case, that... What was discussed about that was... It's a baseball league. Yeah, and that involves uniforms, equipment. And the oil case also talked about, in that particular case, where it said, you know, charge. Charge means an admission to go upon the land. And that's 745LCS65-2D of the Recreational Use Act. That's what it says. It says charge means an admission to go upon the land, okay? And I think that, you know, maybe we're trying to slice it pretty thin here, but I think that participation fee was for them to participate. That involves... All the teams have uniforms. There's equipment. So I don't think that participation... And I think that Judge Desmond, who heard all the evidence, didn't feel like that was... That that brought them out of the meeting. In this particular case, I think if you look at the lease agreement, spectators were not to be charged a fee. And let me just ask a question. Did the Recreation Association pay money for the lease from the park? Did they actually pay something for it? I think there was... Because this lease was a very long-standing lease. It was back in the 70s, I think, if I remember that, when it was done. And it was a nominal fee. And I don't want to say it directly because I just don't remember off the top of my head, but I'm thinking it was a very small figure, basically, that they were giving them, essentially using the park district fields for nothing. But in this particular case, if you look at the Phillips case, the horse riding that was at issue in that case, they charged to ride horses. It was only in this instance that the plaintiff just happened to be there for a birthday party, and just in that one particular instance wasn't charged to ride a horse. But even if you look at the case, there was a sign on the entrance to the children's farm where this horse was kept, and it said, open by reservation only. So it wasn't open to the public if people were charged. And so I think that's why the Phillips case doesn't apply here. In the Jacobson case, the track where the plaintiff was injured was used for snowboarding, or not snowboarding, but snowmobiling. It wasn't too much Olympics. Snowmobiling races. But in that particular day, the snowmobile race had been canceled, and the track was just there open, and anybody could come on and use it. No charge. They could just come on and race on the track. And that's what the plaintiff was doing in that particular case. And the court looked at it and says the track at that time was not being used for profit. So I think that Judge Desmond got it right when he examined those two cases, and I think that that's really what it comes down to in this particular case, is nobody was charged. The rec association was not making money. The baseball fields were being used fortuitously. They were offering it for kids to play summer league baseball and softball, and anybody could come onto the fields and watch games. In terms of the baseball facility. Let me ask you a question about that. Did the judge indicate the basis upon which he believed that the Baseball Facility Liability Act did not apply? I think really that he just couldn't buy that. He felt like that the ball had to come from the field of play. Even though the statute doesn't say that. Even though the statute doesn't say that. And I think that my memory was he just, in an argument, and obviously when you're sitting there and arguing these, I just think that that's what I think he got hung up on. It just didn't seem like it was right that balls could come from other places and immunize them, and I think he was focused on, you know, and this lady here was sitting there watching the game. The act derives from major league and more professional type, not just. Right. But Judge, Your Honor, I would agree with you. I mean, the act, and I think Mr. Alexander said, you know, I think he didn't come out and say it, but he's implying that it should only apply to stadiums. But that's not what the act says. It applies to baseball fields just like this one. And for whatever reason, the legislature, when they drafted this act, did not limit it. They could have done it. They could have said this only applies to major league or minor league stadiums. They said it could apply to anything. And so I think that fact, it wasn't limited in scope in terms of what types of stadiums or fields. It was open to any baseball field. And the other thing that I think, and Justice Wexler has picked up on this, I don't think that you can say I disagree respectfully with Judge Desmond. When the statute says not only does it apply to games but practices, then I think that you go too far by saying, well, we're just going to limit it to balls from the field of play. And I think if you've ever coached a little league or a junior high team or a high school team, I mean, there are guys playing pepper outside the field. There are guys hitting in a batting cage, which are always adjacent to fields. I mean, you go to a high school baseball game. Where does a pitcher go and warm up if he's going to come in in the middle of the game? He warms up outside the dugout, which is really where this took place at. And so I think that the statute did not limit it to professional stadiums, and it did not limit it to games. It said it also includes practices. And I think when you look at that, it's clear that if the legislature had intended to limit it only to from the field of play, it could have said that. It didn't do that. And the best way to determine what did the legislature mean? In this case, I couldn't find any cases other than the baseball cases that Mr. Alexander talked about saying that. So I think that we can only look to the plain language of the statute. I think I would ask the court to apply the plain language of the statute. Of course, that is in our cross-appeal. And I agree with Judge Desmond. I would ask the court to affirm his direct verdict on the Recreation Use Act, if you've got it right, and that it applied. There was no charge to spectators. And in terms of the Baseball Liability Act, I would ask the court to find that, as matter of law, it applies in this particular case. Thank you. Thank you, counsel. Counsel? I guess I'll take it in reverse order. The Baseball Facility Act, in Section 5, says baseball facility means any field, park, stadium, or other facility that is used for the play of baseball. I'm not saying it should be limited to stadiums. It does not say that. I'm not trying to infer that. But it has to be something that's used for the play of baseball. The spectator area is not the area where they're talking about. They're talking about somebody playing baseball on the area that's used for the play of baseball. Mr. Phelps referred to the Jacobson case again. I would like to point out, and he basically said this, but that case, and again, ignoring the fact that it's a Snowmobile Act case because they're very similar, but in that case, nobody that day was paying to use that facility. Nobody. In this case, all the ballplayers paid to use that facility. What did Mr. Barker do wrong? He failed to advise his team. He failed to take charge of his team when he got there. I submit he knew he was taking baseballs. He puts a bucket down, knows the kids are going to get the balls to start warming up. I believe the jury has the right to decide whether he had taken charge at that point and not the court. He did not do any of that. The facts relate that he was at the fence talking. He knew the kids would warm up. They always did. His son always warmed up when he got there. Why did he take the balls? Because he knew they were going to warm up. The honors, I think, I've said enough. We can talk about baseball all day. We appreciate the briefs and arguments of counsel, and they are limited in time, unfortunately.